**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SIMON LEYBA,

       Plaintiff,

       vs.                                 Civ. No. 20-555 KK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security
Administration,[1]

       Defendant.

**MEMORANDUM OPINION AND ORDER[2]**

THIS MATTER is before the Court on Plaintiff Simon Leyba's second appeal seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434 and 1381-1383f. (Doc. 1; AR 798.[3]) On February 12, 2021, Mr. Leyba filed his Motion to Reverse and/or Remand. (Doc. 23.) The Commissioner filed her response in opposition on May 13, 2021, and Mr. Leyba filed his reply in support on May 27, 2021. (Docs. 27, 28.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and should be GRANTED.

---

[1] Kilolo Kijakazi has been automatically substituted for her predecessor, Andrew Saul, as the defendant in this suit. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 15.)

[3] Citations to "AR" are to the Certified Transcript of the Administrative Record filed in this matter on December 14, 2020. (Doc. 20.)

## I.  **Background**

Mr. Leyba suffers from the following severe impairments: diabetes mellitus, bilateral inguinal hernias, bilateral hallux valgus, degenerative disc disease of the lumbar spine, lumbago, idiopathic neuropathy, bilateral plantar fasciitis, adjustment disorder with mixed anxiety and depressed mood, insomnia, major depressive disorder, cholelithiasis, nephrolithiasis, alcohol abuse, hepatitis C, hypertension, cirrhosis, and fibromyalgia. (AR 790.) He completed the tenth grade and was employed as an automobile mechanic in Albuquerque and Rio Rancho, New Mexico for at least 15 years before he claims he became disabled.[4] (AR 38, 40, 172-76, 202, 219, 231, 287, 813, 835-36.) On May 3, 2013, at 40 years of age, Mr. Leyba applied for DIB, alleging he is disabled due to "type 2 diabetes with neurological complication uncontrol[le]d," hepatitis C, and polyneuropathy. (AR 37, 59, 69.) Subsequently, Mr. Leyba also applied for SSI benefits. (AR 160.) His date last insured was December 31, 2017. (AR 788.)

Disability Determination Services found that Mr. Leyba is not disabled both initially and on reconsideration. (AR 79-80, 101-02.) Thereafter, he requested and was granted a hearing before Administrative Law Judge ("ALJ") Ann Farris on the merits of his application. (AR 33-58, 117-18.) On January 29, 2016, ALJ Farris issued an unfavorable decision. (AR 7-25.) The Appeals Council denied Mr. Leyba's request for review and upheld the ALJ's decision on May 10, 2017. (AR 1-5.)

Mr. Leyba sought review of ALJ Farris' decision in this Court on June 22, 2017. (AR 889-91). On May 4, 2018, the Court reversed the decision and remanded the case to the agency. (AR 895-903); *Leyba v. Berryhill*, Civ. No. 17-667 SMV, 2018 WL 2089359 (D.N.M. May 4, 2018).

---

[4] Mr. Leyba initially alleged that he became disabled on January 1, 2013, but later amended his alleged onset date to May 3, 2013 because "[t]here were earnings through that time." (AR 37, 59, 69.)

On August 13, 2018, the Appeals Council vacated the ALJ's decision and remanded the matter to an ALJ for further proceedings. (AR 904.)

Pursuant to the Appeals Council's remand, ALJ Lillian Richter held a hearing in Albuquerque on November 19, 2019, at which Mr. Leyba and Vocational Expert ("VE") Leslie J. White testified. (AR 787, 808-61.) On March 10, 2020, ALJ Richter issued an unfavorable decision. (AR 784-806.) Applying the Commissioner's five-step sequential evaluation process to determine whether Mr. Leyba is disabled,[5] the ALJ determined at step one that Mr. Leyba had not engaged in substantial gainful activity since his alleged onset date. (AR 790.) At step two, the ALJ found that he suffers from the non-severe impairments of gastroesophageal reflux disease and opioid dependence in remission in addition to the severe impairments listed at the beginning of this section. (*Id.*) At step three, the ALJ determined that Mr. Leyba's impairments do not meet or medically equal the severity of one of the Listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (*Id.*)

At step four,[6] the ALJ found that Mr. Leyba has the residual functional capacity ("RFC")

---

[5] The five-step sequential evaluation process requires the ALJ to determine whether:

| (1) | the claimant engaged in substantial gainful activity during the alleged period of disability; |
|---|---|
| (2) | the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement; |
| (3) | any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P; |
| (4) | the claimant can return to his past relevant work; and, if not, |
| (5) | the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. |

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[6] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally stoop, crouch and crawl. He can frequently kneel and occasionally balance; he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He should avoid exposure to unprotected heights and hazardous machinery; he cannot operate a motor vehicle. He can frequently handle, finger, and feel bilaterally; he can occasionally operate foot controls bilaterally. He can perform detailed but not complex work. He can have frequent interaction with supervisors, coworkers and members of the public. He cannot perform assembly line production work.

(AR 793.)

Also at step four, the ALJ found that Mr. Leyba "has past relevant work as an [a]utomobile mechanic" but cannot return to this work "as actually or generally performed." (AR 797 (italics omitted).) Thus, the ALJ proceeded to step five, at which she found "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" (*Id.*) The ALJ relied on the VE's testimony that an individual with Mr. Leyba's age, education, work experience, and assigned RFC could perform jobs including addresser, call out operator, document preparer, table worker, telephone quotation clerk, and ticket checker. (AR 798.) Therefore, the ALJ concluded that Mr. Leyba "has not been under a disability, as defined in the Social Security Act, from May 1, 2013, through the date of this decision[.]" (*Id.*) On June 8, 2020, Mr. Leyba timely appealed ALJ Richter's decision to this Court pursuant to 20 C.F.R. §§ 404.984 and 416.1484.[7] (Doc. 1.)

The Court provides further background as it becomes relevant to the issues discussed below.

---

all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

[7] Sections 404.984 and 416.1484 provide that, when a federal court remands a claimant's case to the agency, the ALJ's decision after remand "becomes the final decision of the Commissioner," provided the claimant does not file exceptions and the Appeals Council does not assume jurisdiction of the case. 20 C.F.R. §§ 404.984(d), 416.1484(d).

## II. <u>Standard of Review</u>

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not disturb the agency's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation marks omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (quotation marks omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Thus, although an ALJ is not required to discuss every piece of evidence, "[t]he record must

demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. <u>Analysis</u>

Mr. Leyba makes two arguments in support of his Motion. First, he argues ALJ Richter erroneously failed to consider "important" evidence supporting:  (a) Dr. Jeremy T. Edmonds' opinion that Mr. Leyba's medical conditions prevent him from participating in regular gainful employment; and, (b) Mr. Leyba's statements regarding the intensity, persistence, and limiting effects of his symptoms. (Doc. 23 at 19-23.) Second, Mr. Leyba argues the ALJ did not properly consider an article his counsel submitted regarding a study funded by the National Institute on Drug Abuse.[8] (*Id.* at 23-24; AR 1059-68.)

In her response, the Commissioner first argues the ALJ reasonably determined that Mr. Leyba's allegations of disabling symptoms are not entirely consistent with other record evidence. (Doc. 27 at 7-11.) The Commissioner next argues substantial evidence supports the ALJ's RFC determination. (*Id.* at 11-13.) In this regard, the Commissioner contends that the ALJ properly discounted Dr. Edmonds' opinion, and properly considered the article Mr. Leyba's counsel submitted. (*Id.* at 12-13.)

As explained below, the ALJ's decision fails to provide the Court with a sufficient basis to determine whether the ALJ followed appropriate legal principles in discounting Dr. Edmonds'

---

[8] The article in question is entitled "Chronic Pain and Hepatitis C Virus Infection in Opioid Dependent Injection Drug Users." (AR 1060.)

opinion and Mr. Leyba's statements regarding his symptoms. Specifically, the ALJ failed to discuss significantly probative record evidence that undercuts (a) two of the reasons she gave for discounting Dr. Edmonds' opinion and (b) her treatment of Mr. Leyba's statements regarding his neuropathic foot pain. The Court will therefore reverse the decision and remand this matter for the ALJ to set out her reasons for accepting or rejecting the significantly probative evidence in question. *Clifton*, 79 F.3d at 1010.

## A.   The ALJ failed to discuss significantly probative evidence that undercuts two of her stated reasons for discounting Dr. Edmonds' opinion.

Medical source opinions are part of the evidence an ALJ must consider, and they are sometimes entitled to special significance.[9] *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating source's medical opinions are sometimes entitled to controlling weight). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). An opinion is *not* a "medical opinion" if it is about an issue reserved to the Commissioner. *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005); 20 C.F.R. §§ 404.1527(d), 416.927(d); "Medical Source Opinions on Issues Reserved to the Commissioner," SSR 96-5p, 1996 WL 374183, at *2 (Jul. 2, 1996).[10] In particular, a provider's opinion that the claimant is "disabled" or "unable to work" is not a "medical

---

[9] The SSA has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 404.1527, 416.920c, 416.927. However, because Mr. Leyba filed his claims in 2013, the previous regulations still apply to this matter. (AR 37, 59, 69, 160.)

[10] SSR 96-5p has been rescinded, but it still applies to this matter because Mr. Leyba filed his claims before March 27, 2017. "Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p," 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017); (AR 37, 59, 69, 160.) Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

opinion." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p, 1996 WL 374183 at *2, *5. Such opinions, even from a treating source, may never be given controlling weight or other special significance. *Lackey*, 127 F. App'x at 457; 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-5p, 1996 WL 374183 at *2, *5.

Nevertheless, ALJs are "required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, *including opinions from medical sources about issues reserved to the Commissioner*." SSR 96-5p, 1996 WL 374183 at *3 (emphasis added). Thus, "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner," the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.*; *see also Lackey*, 127 F. App'x at 458 (ALJ must "assess the extent to which [an] opinion [on an issue reserved to the Commissioner] is supported by the record" using "the applicable factors from § 404.1527(d)") (quotation marks and italics omitted); *Lawton v. Barnhart*, 121 F. App'x 364, 372 (10th Cir. 2005) ("Although an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, and that opinion is not entitled to controlling weight on the ultimate issue, that opinion still must be evaluated by applying the factors provided in § 416.927(d).") (citations omitted). Moreover, when the opinion is from a treating source, the ALJ "must explain the consideration given to" it.[11] SSR 96-5p, 1996 WL 374183 at *6. Where an ALJ's decision fails to demonstrate compliance with these standards, the decision must be reversed and remanded. *Lackey*, 127 F. App'x at 458; *Coca v. Saul*, No. CV

---

[11] In addition, "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion." SSR 96-5p, 1996 WL 374183 at *6 (quotation marks omitted). Here, Mr. Leyba does not argue the ALJ erred by failing to contact Dr. Edmonds to clarify the reasons for his opinion. (*See generally* Docs. 23, 28.) Moreover, the record includes many treatment notes created by Dr. Edmonds and these notes plainly document the bases for his opinion. (*See, e.g.*, AR 1157-62.) Thus, the Court does not rely on the ALJ's failure to contact Dr. Edmonds as a basis for reversal and remand.

18-942 JAP/KK, 2019 WL 4386926, at *8-*10 (D.N.M. Sept. 13, 2019), *report and recommendation adopted*, No. CV 18-942 JAP/KK, 2019 WL 4748038 (D.N.M. Sept. 30, 2019).

Dr. Edmonds was Mr. Leyba's treating physician from December 2013 to April 2018. (AR 390-419, 796, 1071-86, 1095-99, 1102-13, 1117-21, 1128-1209.) On December 29, 2015, Dr. Edmonds wrote a letter stating:

> Mr. Leyba is a patient of mine with chronic, debilitating, peripheral neuropathy, chronic hepatitis C and chronic low back pain. In my professional medical opinion, the aforementioned diseases prevent him from participating in regular, gainful employment[.]

(AR 758.) Similarly, in a treatment note signed on August 25, 2016, Dr. Edmonds wrote that Mr. Leyba "is not a candidate for regular employment at this time because of his medical conditions." (AR 1161.)

By stating that Mr. Leyba's medical conditions prevent him from participating in regular, gainful employment, Dr. Edmonds expressed an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p, 1996 WL 374183 at *2, *5. As such, his opinion is not entitled to special significance. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-5p, 1996 WL 374183 at *2, *5. Nevertheless, the ALJ was still required to "evaluate all the evidence in the case record to determine the extent to which [Dr. Edmonds'] opinion is supported by the record." SSR 96-5p, 1996 WL 374183 at *3. As explained below, the ALJ's decision does not provide the Court with a sufficient basis to determine whether the ALJ followed this legal principle, because the ALJ failed to discuss significantly probative evidence that undercuts two of her stated reasons for discounting Dr. Edmonds' opinion.

In her decision, the ALJ first noted that Dr. Edmonds is a "treating source and acceptable medical source," and acknowledged his opinion that Mr. Leyba's medical conditions "prevent him from participating in regular, gainful employment." (AR 796.) She then stated she gave this

9

opinion "little weight." (*Id.*) The ALJ provided the following reasons for discounting Dr. Edmonds' opinion:

> [i]t contains no functional limitations and the determination that the claimant is unable to work is one that is reserved to the Commissioner. To the extent that I have assessed this statement, I note that [Dr. Edmonds'] conclusions that the claimant is unable to work is [sic] inconsistent with imaging showing normal findings (Exhibit 22F/11). Additionally, the claimant reported that his feet hurt from time to time and that medication helped the pain, [(]Exhibit 22F/48-49)[.] Additionally, Dr. Edmond[s] has prescribed generally conservative treatment. Additionally, his conclusions appear inconsistent with later treatment notes showing normal gait, improvement with alcohol cessation and treatment compliance, and notations that the claimant reported performing some work as a mechanic. (Exhibit 22F/62, 122, 159, 125; 19F/3).

(*Id.*)

Conspicuously absent from the ALJ's decision is any discussion of significantly probative evidence that undercuts two of the reasons she gave for discounting Dr. Edmonds' opinion. First, the ALJ failed to discuss extensive record evidence undercutting her stated reason that Mr. Leyba "reported that his feet hurt from time to time and that medication helped the pain[.]" (*Id.*) In support of this reason, the ALJ cited to a lone December 2014 note in which Dr. Edmonds did write, *inter alia*, "[Patient s]tates his feet hurt from time to time" and "Baclofen does help the pain." (AR 1117-18.) In relying on this note, however, the ALJ failed to acknowledge or discuss the overwhelming record evidence that, throughout the relevant time frame: (1) Mr. Leyba regularly reported experiencing severe, persistent neuropathic pain in his feet; (2) even when medication helped, he still reported significant, persistent pain; and, (3) his physicians ultimately discontinued his prescriptions for baclofen and tramadol, two of the medications his records described as helpful.

Mr. Leyba's medical records show he was diagnosed with idiopathic or diabetic neuropathy throughout the relevant time frame. (*See*, *e.g.*, AR 311, 390-419, 796, 1071-86, 1095-99, 1102-13,

1117-21, 1128-1209, 1231.) As early as April 11, 2013, Mr. Leyba sought medical treatment complaining of "constant throbbing, burning, aching" "[b]ilateral foot pain and swelling x's 7 months" making it "painful to walk or drive." (AR 311.) At a fitting for therapeutic footwear on April 17, 2013, he reported "[s]evere burning" foot pain. (AR 316, 319.) On December 5, 2013, he complained to Dr. Edmonds of pain in his feet "all day long." (AR 1071.) Dr. Edmonds increased his gabapentin dose and also prescribed amitriptyline. (AR 1071, 1073.)

Mr. Leyba again reported bilateral foot pain to Dr. Edmonds on February 3, 2014; Dr. Edmonds increased his doses of gabapentin and amitriptyline. (AR 1082-84.) On March 26, 2014, Mr. Leyba reported to Francisco P. Sanchez, Ph.D., a mental health care provider, that his "[f]eet started hurting about a year ago." (AR 1087.) On May 1, 2014, he saw Dr. Norma Perez-Abele, to whom he reported "persistent [n]europathy of feet despite [n]eurontin & increase of dose." (AR 1093.) She noted that he "has difficulty walking [due to] pain" and referred him to a podiatrist. (AR 1094.) Mr. Leyba saw Dr. Edmonds again on May 14, 2014, complaining of "Foot Pain x 1 yr." (AR 1095 (italics omitted).) Dr. Edmonds noted that the pain was "consistent with neuropathy" and Mr. Leyba "feels frustrated because the pain is ongoing." (AR 1095-96.) He increased Mr. Leyba's dose of amitriptyline and also prescribed tramadol. (AR 1098.) At a diabetic foot evaluation on May 21, 2014, Mr. Leyba complained of "severe neuropathic foot pain" and an "inability to stay on [his] feet for any length of time[.]" (AR 435-36.) On June 12, 2014, he told Dr. Sanchez his "[h]ealth status is the same (chronic pain in back and feet)[.]" (AR 1100.) At an appointment with Dr. Edmonds on August 13, 2014, he reported "burning and tingling in the feet" and "[c]onstant pain." (AR 1102.) Dr. Edmonds prescribed Effexor in lieu of amitriptyline. (AR 1106.) Mr. Leyba again reported foot pain to Dr. Edmonds on October 30, 2014; Dr. Edmonds

prescribed Lyrica in lieu of gabapentin. (AR 1108-11.) On November 12, 2014, Mr. Leyba told Dr. Sanchez "he continues to have significant foot and back pain." (AR 1114.)

At an appointment with Dr. Edmonds on June 24, 2015, Mr. Leyba reported "extreme" bilateral foot pain. (AR 1128.) Dr. Edmonds diagnosed "severe" neuropathy, noted Mr. Leyba did "not know if the [L]yrica or the tramadol are helping his pain," and referred him to a pain clinic. (AR 1131.) On July 28, 2015, Mr. Leyba complained to Dr. Edmonds of feet and back pain at a level of "8/10." (AR 1138.) By this visit, his prescription medications included baclofen, lidocaine, and Lyrica. (AR 1138-39.) Dr. Edmonds described Lyrica as "[h]elpful[.]" (AR 1140.) However, on September 4, 2015, Mr. Leyba saw Dr. Michael Pylman at USA Pain Clinics, reporting that "over the last 4-1/2 years [he] has been having burning foot pain[,]" "[h]is pain waxes and wanes but never goes away[,]" and "it's been slowly worsening." (AR 751.) Dr. Pylman prescribed tramadol in addition to Mr. Leyba's other medications, and recommended right medial branch blocks, which he performed on September 15, 2015. (AR 747, 755.) At a follow-up visit on October 2, 2015, Mr. Leyba reported that the branch blocks decreased his pain by 20 per cent, he was "unclear as to the effects of" Lyrica and Effexor, and "[t]he tramadol helps with the discomfort however it is not helping as much as he likes." (AR 745.) Dr. Pylman increased his tramadol dose and added a prescription for Topamax. (AR 746.) Mr. Leyba returned to Dr. Pylman on October 22, 2015; Dr. Pylman noted that tramadol "helps with his pain" and Topamax "may . . . help" but "causes some sedation." (AR 742.) Dr. Pylman ordered "psychometrics in anticipation for trial of [a spinal cord stimulator]." (AR 744.) On November 19, 2015, Mr. Leyba complained to Dr. Pylman of "low back and foot pain" and reported "that the tramadol helps some with his pain but

not the level that he like[s]." (AR 740.) Dr. Pylman recommended a trial stimulation of Mr. Leyba's spinal cord.[12] (*Id.*)

Mr. Leyba reported "pain in the hands and feet" at an appointment with Dr. Edmonds on April 14, 2016. (AR 1143.) On August 24, 2016, he told Dr. Edmonds his pain was at a level of "8/10" and his feet were "burning." (AR 1158.) Dr. Edmonds again diagnosed Mr. Leyba with "severe" neuropathy, writing that he "has had injections, taking medications, still with significant pain."[13] (AR 1161.) On December 2, 2016, Mr. Leyba once again reported "[s]evere" neuropathy. (AR 1164.) At this visit, Dr. Edmonds noted "[s]evere pain . . . with minimal stimulation bilateral feet" and that Mr. Leyba had "[f]ailed multiple therapies." (AR 1164, 1167.) He discontinued Mr. Leyba's Effexor prescription, continued his prescriptions for amitriptyline, Lyrica, tramadol, lidocaine, and baclofen, and gave him a "medical cannabis application." (AR 1165, 1167.)

Regarding Mr. Leyba's visit on April 12, 2017, Dr. Edmonds wrote, "Chronic pain. Taking tram[a]dol. Helping. In the feet." (AR 1170.) However, on August 9, 2017, Mr. Leyba again reported "severe foot pain" to Dr. Edmonds, (AR 1180), and on October 12, 2017, Dr. Edmonds wrote that Mr. Leyba has "chronic neuropathy," for which he was "[u]sing tramadol," but he "[s]tates [it] do[es] not help much." (AR 1189.) Dr. Edmonds noted "significant neuropathic pain" and continued prescriptions for tramadol, Lyrica, amitriptyline, lidocaine, and baclofen. (AR 1190, 1192.)

On February 27, 2018, Mr. Leyba told Dr. Edmonds he was "still with very severe pain" and "[t]aking tramadol twice a day however the pain is worsening." (AR 1194.) At this visit Dr.

---

[12] However, Mr. Leyba testified that he ultimately elected not to have a spinal cord stimulator implanted because of "the very minimal relief that [he] received off of the test." (AR 827.)

[13] It was in his note regarding this visit that Dr. Edmonds added, "Patient is not a candidate for regular employment at this time because of his medical conditions." (AR 1161.)

Edmonds noted Mr. Leyba was "failing tramadol." (AR 1198.) On April 4, 2018, Dr. Edmonds recorded that Mr. Leyba had started Suboxone for chronic pain and opiate dependence but stopped taking the medication due to leg swelling. (AR 1205.) He wrote that Mr. Leyba "did find relief with tramadol at low doses" and recommended continuing that medication "for now." (AR 1209.) On September 6 and December 6, 2018, Dr. Kamil Prasad noted "[s]igns of neuropathic pain in bilateral feet that goes up his legs[,]" and that Mr. Leyba had had bilateral neuropathy in his feet for "years." (AR 1210, 1228.) He recommended another podiatry evaluation and referred Mr. Leyba to a pain clinic but did "not agree with management plan of taking tramadol indefinitely" due to Mr. Leyba's "history of opiate dependence[.]" (AR 1214, 1231-32.) On December 6, 2018, Dr. Prasad added that "continuing tramadol indefinitely is likely not the best solution for him due to its potential negative side effects." (AR 1232.)

Mr. Leyba's testimony at his November 2019 hearing before the ALJ accords with the foregoing records. Specifically, he described his neuropathic foot pain as "constant burning." (AR 817.) He added, "right now, they're burning and I'm not even doing anything." (AR 818.) He also testified that, although tramadol helped his pain, he was no longer taking it because "[t]hey said it was highly addictive so they—they cut me off of it." (AR 847.)

In short, there is voluminous, significantly probative evidence that Mr. Leyba persistently reported severe bilateral neuropathic foot pain from 2013 to 2019, for which he tried multiple prescription medications without significant relief. The ALJ was required to evaluate this evidence "to determine the extent to which [Dr. Edmonds'] opinion is supported by the record" and "explain the consideration" she gave his opinion. SSR 96-5p, 1996 WL 374183 at *3, *6. Yet, the ALJ failed to discuss this evidence and instead rejected Dr. Edmonds' opinion based on a single report that Mr. Leyba said "his feet hurt from time to time" and "medication helped the pain." (AR 796.)

The Court has some difficulty imagining how substantial evidence could support the ALJ's reliance on this one report, when so much other record evidence undercuts it. *See Langley,* 373 F.3d at 1118 (ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record"). But in any event, the ALJ clearly erred by failing to offer any explanation at all for her apparent rejection of an extensive collection of evidence in favor of a single report. *Clifton*, 79 F.3d at 1009-10.

The ALJ also erred by discounting Dr. Edmonds' opinion on the basis that Mr. Leyba "reported performing some work as a mechanic" in 2018, without discussing significantly probative evidence to the contrary. (AR 796.) In this regard, the ALJ relied on a December 6, 2018 note in which Dr. Prasad wrote, "Patient works as a mechanic sometimes." (*Id.* (citing AR 1228).) Dr. Prasad included the same statement in a note dated September 6, 2018. (AR 1210.)

However, at the November 2019 hearing, the ALJ specifically asked Mr. Leyba about Dr. Prasad's notation and Mr. Leyba disputed it.  Thus:

Q    And since you stopped working as a mechanic, have you done any mechanic work at all? Worked on your own cars, other people's cars?

A    No.

Q    No? Because it looks like when I read the medical records, like occasionally you've reported doing some mechanic work. Let me see if I can find references. So in 2018, let's see, this is at Presbyterian. And it says patient works as a mechanic sometimes. So this is a lot of years after you stopped working at –

A    Again?

Q    2018, in December of 2018, so that's less than a year ago, you were at Presbyterian.

A    Okay.

Q    And you were there about your pain in your feet and your back pain. And the note says patient works as a mechanic sometimes.

15

A  I don't know where they put what note.

Q  You don't know what that note -- what they're talking about?

A  No.

ATTY: It's in that section and it's from Dr. Prasad.

CLMT: I may have told him that's what I used to do. But I don't work.

(AR 845-46.)

Further, when his counsel asked why Dr. Prasad might have written that he did, Mr. Leyba responded, "I don't know. I mean he could have asked me, you know, what did I do and I told him, you know, I used to be a mechanic or something." (AR 848.) Asked if Dr. Prasad's note "[c]ould … just be lost in translation," Mr. Leyba testified, "I believe it is."[14] (*Id.*) Moreover, Mr. Leyba's testimony on this point is consistent with record evidence that he last earned income in 2013. (*See, e.g.*, AR 166-85.) Yet, nowhere in her decision did the ALJ discuss or even mention Mr. Leyba's sworn testimony disputing Dr. Prasad's notation.

---

[14] In context, Mr. Leyba's exchange with his counsel certainly appears to confirm his earlier testimony, in response to the ALJ's questions, that he did not work as a mechanic in 2018. (AR 848.) The exchange is not completely free from ambiguity, however:

Q  I showed you the record from Dr. – his name we pulled up – from a doctor from 2018 where it says that you worked occasionally as a mechanic. That was from Dr. Prasad. Your testimony today under oath is that you didn't work as a mechanic in 2018.

A  No.

Q  What do you attribute this statement to?

A  I don't know. I mean he could have asked me, you know, what did I do and I told you, you know, I used to be a mechanic or something.

Q  Could it just be lost in translation?

A  I believe it is.

(*Id.*) The Court cannot determine whether any ambiguity played a role in the ALJ's decision, because the ALJ failed to discuss Mr. Leyba's testimony on this point at all. (AR 784-99.)

Of course, "[c]redibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, having relied on Dr. Prasad's notation to discount Dr. Edmonds' opinion, the ALJ was not free to simply ignore Mr. Leyba's testimony disputing the notation. Rather, she was required to evaluate this testimony "to determine the extent to which [Dr. Edmonds'] opinion is supported by the record" and "explain the consideration" she gave it. SSR 96-5p, 1996 WL 374183 at *3, *6. The ALJ's failure to discuss Mr. Leyba's testimony disputing Dr. Prasad's notation is therefore reversible error.[15] *Clifton*, 79 F.3d at 1009-10.

In sum, the ALJ failed to discuss significantly probative evidence that undercuts two of her stated reasons for discounting Dr. Edmonds' opinion. As such, her decision does not demonstrate that she evaluated all the evidence to determine the extent to which Dr. Edmonds' opinion is supported by the record and does not adequately explain her consideration of his opinion. SSR 96-5p, 1996 WL 374183 at *3, *6. Because the ALJ has not provided the Court with a sufficient basis to determine whether she followed appropriate legal principles in her consideration of Dr. Edmonds' opinion, reversal is warranted. *Jensen*, 436 F.3d at 1165. On remand, the ALJ should "set out . . . [her] reasons for accepting or rejecting" the significantly probative evidence she failed to discuss. *Clifton*, 79 F.3d at 1010.

---

[15] In addition, even if the ALJ were to reject Mr. Leyba's testimony that he performed no work as a mechanic in 2018, she would still need to consider whether any work he performed was merely "sporadic" and thus failed to show an ability to participate in regular, gainful employment. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.") (quotation marks and brackets omitted). This inquiry seems particularly pertinent in light of the ALJ's determination that Mr. Leyba "has not engaged in substantial gainful activity since May 1, 2013." (AR 790.)

**B.**     **The ALJ failed to discuss significantly probative evidence that supports Mr. Leyba's statements regarding his neuropathic foot pain.**

Mr. Leyba also argues the ALJ did not properly consider the record evidence supporting his statements regarding the intensity, persistence, and limiting effects of his symptoms, particularly pain. (Doc. 23 at 19-23.) "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson*, 987 F.2d at 1488 (citing *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988)). Instead, "[b]efore [an] ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)). If a claimant satisfies this requirement, then the ALJ must consider whether there is at least a "loose nexus" between the proven impairment and the subjective complaints of pain. *Id.* (quoting *Musgrave*, 966 F.2d at 1375-76). Finally, if there is a loose nexus, the ALJ must consider all of the evidence, both objective and subjective, to determine whether the pain is disabling. *Id.*

In assessing a claimant's statements regarding pain,

the ALJ should consider such factors as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (quotation marks omitted). As noted in subsection III.A., *supra*, although "[c]redibility determinations are peculiarly the province of the finder of fact," such determinations must still be "supported by substantial evidence." *Diaz*, 898 F.2d at 777; *see also Broadbent v. Harris*, 698 F.2d 407, 413-14 (10th Cir. 1983) (rejecting ALJ's credibility determination for lack of an "adequate

basis" in the record even though such determinations "are generally considered binding on the

reviewing court").

Describing Mr. Leyba's statements regarding his neuropathic foot pain, the ALJ noted

that he

> testified to pain, numbness, and tingling. He testified to attending physical therapy
> and a pain clinic. He testified to severe . . . feet pain . . . . He reported that he
> rarely sleeps at night due to constant pain from . . . neuropathy in his feet; this also causes
> difficulty with walking (12E/2). . . .  He reported that grooming is difficult because
> he cannot stand more than 30 minutes[.]

(AR 793.)

> The ALJ wrote that "[a]fter careful consideration of the evidence," she found Mr. Leyba's

> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms; however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely consistent with
> the medical evidence and other evidence in the record *for the reasons explained in
> this decision*.[16]

(AR 793-94 (emphasis added).) She then made the following observations regarding Mr. Leyba's

"idiopathic neuropathy":

> [s]evere neuropathic pain of the feet was noted to affect the claimant's balance
> (2F4-5). He was observed to have a slow, painful gait (2F5). . . . He was very
> sensitive with monofilament neurological testing (22F/2). . . . He was prescribed
> Gabapentin and Amitriptyline for neuropathy of the feet (22F/15). Monofilament
> testing showed normal findings (22F71).

(AR 794.) She did not further elucidate her reasons for discounting Mr. Leyba's statements

regarding his neuropathic foot pain. (*See* AR 793-95.)

Thus, the only evidence the ALJ actually identified to support discounting Mr. Leyba's

statements regarding his neuropathic foot pain was that "[m]onofilament testing showed normal

---

[16] Later in her decision the ALJ was less equivocal on this point, stating that, "[a]s for [Mr. Leyba's] statements about the intensity, persistence, and limiting effects of his or her [sic] symptoms, they are inconsistent with the record." (AR 795.)

findings," citing a July 28, 2015 note by Dr. Edmonds. (AR 794 (citing AR 1140).) However, the ALJ did not discuss why she relied on this test result—if indeed she did—instead of, for example, the December 5, 2013 monofilament test result showing heightened sensitivity. (*Id.* (citing AR 1072).) Nor did she even mention, much less discuss, other significantly probative evidence supportive of Mr. Leyba's statements regarding his neuropathic pain, such as the August 2014 nerve conduction study that was "consistent with neuropathy," (AR 451, 1102), or Dr. Edmonds' December 2, 2016 note recording Mr. Leyba's "[s]evere pain . . . with minimal stimulation bilateral feet" during a diabetic foot exam. (AR 1167); *see Gatson*, 838 F.2d at 447–48 ("[O]bjective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well[.]").

Of course, the reasons the ALJ gave for discounting Dr. Edmonds' opinion could also apply to her determination that Mr. Leyba's statements regarding his neuropathic pain "are inconsistent with the record."[17] (AR 795.) Indeed, it is quite possible the ALJ actually relied on those reasons to reject Mr. Leyba's statements given her vague reference to "the reasons explained in this decision" to support the rejection. (AR 794.) Yet, as discussed at some length in subsection III.A., *supra*, significantly probative evidence undercuts two of the ALJ's stated reasons for her treatment of Dr. Edmonds' opinion. Thus, significantly probative evidence also undercuts those reasons to the extent the ALJ relied on them to discount Mr. Leyba's statements regarding the intensity, persistence, and limiting effects of his neuropathic foot pain.

Again, in her decision, the ALJ does not discuss this significantly probative contradictory evidence or explain why she rejected it. (AR 784-99.) Therefore, the decision does not support that

---

[17] This is not surprising given that both Dr. Edmonds' opinion and Mr. Leyba's statements are directly relevant to the ultimate issue in the case, *i.e.*, whether Mr. Leyba's medical conditions prevent him from working.

the ALJ "consider[ed] all the evidence, both objective and subjective," to determine whether Mr. Leyba's pain was disabling. *Thompson*, 987 F.2d at 1488. In particular, the decision fails to show that she properly considered "such factors as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts," and "the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id.* at 1489 (quotation marks omitted). Because the ALJ has not provided the Court with a sufficient basis to determine whether she followed appropriate legal principles in her consideration of Mr. Leyba's statements regarding his neuropathic pain, reversal is warranted. *Jensen*, 436 F.3d at 1165. On remand, the ALJ should "set out . . . [her] reasons for accepting or rejecting" the significantly probative evidence she failed to discuss. *Clifton*, 79 F.3d at 1010.

C.     **The ALJ's errors were not harmless.**

The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Nevertheless, "harmless error analysis . . . may be appropriate to supply a missing dispositive finding" where a court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34 (quotation marks omitted). For the following reasons, the Court cannot confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual questions at issue here in any other way.

As discussed in subsections III.A. and B., *supra*, because she did not discuss the significantly probative evidence undercutting her reasons for discounting Dr. Edmonds' opinion and Mr. Leyba's statements regarding his neuropathic foot pain, the Court cannot determine whether the ALJ considered this evidence. Assuming she did not, doing so could reasonably have led to different findings, *i.e.*, she may not have discounted Dr. Edmonds' opinion, and may have

fully credited Mr. Leyba's statements regarding the persistence, intensity, and limitations of his neuropathic pain. This, in turn, would likely have resulted in a more restrictive RFC and a finding of disability.

Further, the Court notes that none of the *uncontradicted* reasons the ALJ gave for discounting Dr. Edmonds' opinion are so compelling that any reasonable factfinder would have discounted the opinion in reliance on these reasons alone. Although the "imaging" on which the ALJ relied "show[ed] normal findings," (AR 796 (citing AR 1080)), a nerve conduction study was "consistent with neuropathy." (AR 451, 1102.) Although Dr. Edmonds arguably "prescribed generally conservative treatment," (AR 796), Mr. Leyba underwent "right medial branch . . . blocks," (AR 747-50), and was a candidate for surgical implantation of a spinal cord stimulator. (*See, e.g.*, AR 740.) Although several of Mr. Leyba's medical records note a "normal gait," (AR 796 (citing AR 1191); *see also, e.g.*, 540, 558, 743, 1139), others note gait abnormalities. (AR 317, 436, 741, 754.) And, although the record cited by the ALJ does document "improvement" of Mr. Leyba's *diabetes* "with alcohol cessation and treatment compliance," (AR 796), it does not document improvement of his neuropathic pain. (*See* AR 1131 (at visit where Mr. Leyba "[d]enie[d] any recent etoh consumption," his "[diabetes] m[ellitus] [was] doing much better" but his neuropathy was still "severe"); *see also* AR 1194 (at visit where Mr. Leyba had not drunk alcohol "in several months," his diabetes was "[m]arkedly improved" but he was "still with very severe pain").)[18] In these circumstances, the Court cannot say the ALJ's errors were harmless.

_____

[18] The Court is aware that, in accounting for her RFC determination as it relates to Mr. Leyba's degenerative disc disease of the lumbar spine, lumbago, and fibromyalgia, the ALJ relied on Dr. William Abbott's note "that [Mr. Leyba's] pain was not proportional to the physical findings." (AR 794.) However, Dr. Abbott is a colo-rectal, oncological, and general surgeon Mr. Leyba consulted for "bilateral groin pain"; thus, his note is irrelevant to Mr. Leyba's neuropathic foot pain. (AR 1285.) The ALJ also supported her RFC determination more generally by noting that Mr. Leyba "can drive, shop, cook, clean, [and] do laundry," (AR 796); however, she failed to mention or discuss the significant limitations on these activities that Mr. Leyba reported. (*See, e.g.*, AR 237-44, 820-21, 832-33); *see*

**D.**     **The Court will not address Mr. Leyba's remaining claim of error.**

The Court will not address Mr. Leyba's remaining claim of error because it may be affected by the ALJ's treatment of this case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**IV. <u>Conclusion</u>**

For the reasons stated above, Mr. Leyba's Motion to Reverse and/or Remand (Doc. 23) is GRANTED.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent

---

*Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011) (while summary of daily activities, "[o]n its face . . . does sound inconsistent with the degree of impairment voiced by [the claimant] and his doctor[,] the specific facts behind the generalities paint a very different picture").